UNITED STATES of America,
Plaintiff–Appellee,

v.

Allen YOUNG, Defendant–Appellant.

No. 93–1138.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 8, 1994.

Decided April 1, 1994.

Philip A. Guentert, Bennett E. Kaplan (argued), Crim. Div., Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for U.S.

Steven Saltzman (argued), Chicago, IL, for Allen Young.

Before PELL, WOOD, Jr., and ESCHBACH, Circuit Judges.

ESCHBACH, Circuit Judge.

A jury convicted Allen Young of conspiracy to possess with intent to distribute cocaine and of attempted possession with intent to distribute approximately one kilogram of cocaine, violations of 21 U.S.C. §§ 841(a)(1) and 846. Young filed two motions for a new trial, both of which the district court denied. Young appeals and raises four issues before this Court. He argues that the district court erred in denying his motion for a new trial based on newly discovered evidence. Young also maintains that an *in limine* order unfairly prejudiced his defense and that the evidence at trial was insufficient to establish

his guilt beyond a reasonable doubt. Finally, he contends that his trial counsel was constitutionally ineffective. We affirm Young's conviction on all grounds and dismiss without prejudice his newly raised claims of ineffective assistance of counsel.

## I.

### A. Factual Background

On March 13 or 14, 1992, an individual nicknamed "June" telephoned Rufus Traylor a/k/a "Cheese" and offered to sell him cocaine. Traylor, who had purchased cocaine from June in the past, told June he was not ready to buy any cocaine at that time. Approximately ten days later, Allen Young went to Traylor's home in Peoria, Illinois, and asked Traylor if he knew of anyone who had cocaine for sale. Traylor responded affirmatively and the two men decided to contact June.

Unbeknownst to Traylor and Young, June was cooperating with the Drug Enforcement Agency ("DEA"). When June returned Traylor's page, Agent Rafael Tovar of the Northeastern Metropolis Enforcement Group ("NEMEG")[1] was also on the telephone line posing as "Alex", the cocaine seller. In their recorded conversation, Traylor discussed purchasing cocaine from Agent Tovar. This transaction was to be the first of a series of cocaine transactions. June told Traylor that he and Agent Tovar would sell Traylor a kilogram of cocaine for $18,000 and if Traylor paid $10,000 up front, he could pay the remaining $8,000 later. June, Traylor, and Agent Tovar agreed to meet at a mall in Joliet, Illinois to conduct their transaction.

The next day, Traylor and June changed the date and the place of the deal to March 25 at the Hillside Mall in Hillside, Illinois. Young was present when Traylor spoke with June to make these new arrangements. Traylor and Young then decided to drive to Chicago that day, spend the night, and meet June and Alex the next day. Before leaving for Chicago, Traylor and Young arranged

financing for the purchase of the cocaine. Traylor agreed to pay the initial $10,000 and he and Young would combine efforts to sell the cocaine. Out of the sales' proceeds, they would pay June the remaining $8,000 balance, Traylor would recoup his $10,000, and Young and Traylor would split any remaining profits.

Traylor and Young, together with Jerome Smith and Anita Russell, later met and left Peoria for Chicago. Traylor rode with Smith while Young and Russell drove separately in Young's Ford Mustang. When the group arrived in Chicago, they checked into adjoining rooms at the Travel Inn on Michigan Avenue. Traylor spent the night in one room and Young and Russell spent the night in the second room.[2] The next day, on the morning of March 25, Traylor spoke with June and arranged to meet June and Agent Tovar in the parking lot of the Hillside Mall near the Trak Auto store. June instructed Traylor to be there at 1:30 p.m. and act as though he was putting anti-freeze into the car. Thereafter, Traylor took a taxi from the Travel Inn to the Hillside Mall. Young and Russell followed in Young's car and when they arrived at the mall, Traylor got into their car. Young parked the car in front of the Trak Auto store and raised the car's hood as June had instructed.

June and Agent Tovar arrived shortly thereafter in Agent Tovar's car. At the same time, NEMEG Agent Frederick Guerra, acting as Agent Tovar's associate, arrived in a second car. Agent Guerra's car was equipped with a secret compartment containing two mock packages of cocaine—one appeared to be a full kilogram of cocaine and the other appeared to be a half a kilogram of cocaine. After Agent Tovar parked, June got out of the car and walked over to Young's Mustang where Traylor met him. After a short conversation, June and Traylor walked over to Agent Tovar's car and both men got into the car. In a recorded conversation, Agent Tovar and Traylor discussed the terms of the deal and the prospect of future

---

**1.** NEMEG is a task force composed of law enforcement officers from different jurisdictions charged with enforcing state and federal narcotics laws in cooperation with federal agencies.

**2.** Smith stayed with relatives in Chicago.

deals between them. Traylor then gave Agent Tovar $10,000 in cash as partial payment for the cocaine. Agent Tovar told Traylor that he could check out the cocaine if he wanted, and then told Traylor to send Young to check it out.

At this time, Young was standing near his car looking around the parking lot while Russell sat inside the car. Agent Tovar honked his car's horn to get Young's attention and then Traylor, June, and Agent Tovar waved Young over to the car. When Young walked over to the passenger side of Agent Tovar's car, Traylor introduced him, saying, "This is Allen." Agent Tovar pointed to Agent Guerra's undercover car and said, "Allen? I'll tell you what, see that car over there? The gray one with the guy sitting on the door, he's [sic] show you the stuff, so make sure you're satisfied, alright?" Young nodded, walked over to Agent Guerra's car, and got inside.

Once Young was inside Agent Guerra's car, Agent Guerra activated the magnets which opened the secret compartment. Agent Guerra told Young, "I'm just going to show you what's here," and then asked Young, "What are you guys supposed to be getting?" Agent Guerra showed Young the full kilogram package and then the half kilogram package and said, "We have a full one and a half of one." Young responded, "Supposed to get a full one," and pointed to the one kilogram package.

After Agent Guerra put both of the mock cocaine packages back into the secret compartment, Agent Tovar waved to him, indicating that Agent Guerra should drive his car over to Agent Tovar's car. With Young sitting in the passenger seat, Agent Guerra drove over and parked next to Agent Tovar's car. Agent Tovar asked Traylor whether he wanted to see the cocaine and Traylor got out of the car and walked towards Agent Guerra's car. At that time, Agent Tovar

gave the arrest signal and Young, Traylor, and Russell were arrested.

### B. Procedural Background

On April 23, 1992, a grand jury returned a two-count indictment against Traylor and Young. The indictment charged both men with conspiring to possess with intent to distribute cocaine and attempting to possess with intent to distribute approximately one kilogram of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Both defendants pled not guilty. However, shortly before trial, Traylor withdrew his plea of not guilty and pled guilty to the conspiracy count of the indictment. As part of his plea agreement, Traylor agreed to cooperate with the government and testify against Young.

Following a three-day trial in July 1992, a jury convicted Young on both charges. Thereafter, Young's attorney motioned for a new trial or, in the alternative, a judgment of acquittal, arguing that the evidence was insufficient to sustain the jury's verdict and that the district court erred in granting the government's *in limine* motions.[3] Young then filed a *pro se* motion for a new trial contending that he received ineffective assistance of counsel.[4] The district court denied the post-trial motion and sentenced Young to 63 months' incarceration, followed by a four-year period of supervised release.

Shortly thereafter, Young's attorney filed a motion for a new trial based on newly discovered evidence relating to Traylor's criminal history. The district court reviewed the motion as a motion for a new trial pursuant to Fed.R.Crim.P. 33 and also treated it as a 28 U.S.C. § 2255 petition seeking post-trial relief from a constitutional violation. The court denied the motion for a new trial on both grounds. Young filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

---

**3.** Before Young's trial, the government filed two *in limine* motions, both of which the district court granted. The first precluded Young from using a misdemeanor shoplifting conviction to impeach Traylor. The second precluded Young from introducing evidence that Anita Russell was released and not criminally charged after her arrest. In his original motion for a new trial,

Young challenged both *in limine* orders. However, on appeal, Young challenges only the *in limine* order related to Anita Russell.

**4.** The district court supplemented Young's attorney's motion for a new trial with Young's *pro se* filing and letters.

## II.

### A. Newly Discovered Evidence

Young's primary argument on appeal is that he should have been granted a new trial because of the late discovery of Traylor's Mississippi criminal record. As stated earlier, Traylor pled guilty to conspiracy and testified against Young at his trial. Prior to Young's trial, the government conducted a computer search of both the National Crime Information Center ("NCIC") and the Illinois CCH databases for any criminal history of Traylor. Except for Traylor's arrest in the instant case, the computer searches revealed no criminal convictions or charges against Traylor. A further check of FBI records uncovered no record of arrests or convictions for Traylor. The government also checked the criminal records in Peoria, Illinois, where Traylor resided. This inquiry revealed only a 1990 misdemeanor shoplifting charge against Traylor. Finally, the government questioned Traylor about his criminal history and he acknowledged no criminal record other than the shoplifting conviction. The government disclosed Traylor's plea agreement and the results of its criminal history searches to Young before trial.

However, after Young's trial, during the U.S. Probation Office's presentence investigation of Traylor, the Probation Office discovered that Traylor had a criminal record in Mississippi. The Mississippi state court records revealed the following entries:

a. 11/18/80; Union County, Mississippi Youth Court; shoplifting; adjudicated delinquent;

b. 03/05/84 (disposition); Union County, Mississippi Circuit Court; grand larceny; four years suspended sentence, fine, three years probation;

c. 01/16/87; New Albany, Mississippi Municipal Court; suspended driver's license and DUI; fine;

d. 01/28/87; New Albany, Mississippi Municipal Court; marijuana possession; fine;

e. 05/10/87; New Albany, Mississippi Municipal Court; concealed weapon; 30 days jail; 20 days susp.; and

f. 11/12/91 (disposition); Union County, Mississippi Circuit Court; possession of less than one ounce, drug possession with intent to sell; no charges.[5]

■ Upon learning of Traylor's additional criminal history, the government informed Young. Young then filed a "renewed post-trial motion for a new trial, or alternatively, motion for a new trial based on newly discovered evidence," seeking a new trial under Federal Rule of Criminal Procedure 33 ("Rule 33") and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The district court considered his Rule 33 motion based on newly discovered evidence and treated his claim of a *Brady* violation as a petition for habeas corpus relief under 28 U.S.C. § 2255.[6] The district court then denied Young a new trial on both grounds. We review each ground separately.

#### 1. Federal Rule of Criminal Procedure 33

Rule 33 provides that "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interests of justice.... A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment...." Young maintains that the newly discovered evidence of Traylor's criminal history mandates that he be given a new trial. He contends that Traylor's Mississippi criminal history severely undermines his credibility as a witness. Addi-

---

**5.** The Mississippi records also included an order dated June 13, 1991, indicating that Traylor pled guilty to five "causes" and agreed to pay $518 with any jail sentence suspended. The nature of the charges was not specified.

**6.** Although the district court treated Young's claim of a *Brady* violation as a petition for habeas corpus relief, we do not. A timely motion for a new trial under Rule 33 allows the district

court to consider and the appellate court to review an accompanying *Brady* claim without invoking habeas corpus jurisdiction. *See e.g. United States v. Kozinski*, 16 F.3d 795, 817 (7th Cir. 1994); *United States v. Snoddy*, 862 F.2d 1154, 1156 (5th Cir.1989). We consider Young's *Brady* claim as an element of his request for a new trial under Rule 33.

tionally, he points out that Traylor lied to the government about his criminal past. Young argues that if the jury had known of Traylor's full criminal record and his dishonesty with the prosecution, the jury would never have believed Traylor's testimony or the government's case against Young.

Courts exercise great caution when considering a motion under Rule 33 to set aside a verdict on the basis of newly discovered evidence because of the importance accorded to repose, regularity of decision-making, and conservation of judicial resources. *United States v. Kamel*, 965 F.2d 484, 490 (7th Cir.1992). In a long line of cases, this Court has established a four-part test a defendant must satisfy to establish his right to a new trial. Specifically, the defendant must show that the evidence upon which he relies:

(1) came to his knowledge only after trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a new trial.

*Id.* (quoting *Jarrett v. United States*, 822 F.2d 1438, 1445 (7th Cir.1987)). Additionally, this Court has also held that the decision to grant or deny a new trial under Rule 33 is within the sound discretion of the trial court. We will not disturb the district court's ruling absent an abuse of discretion. *Id.* In this case, Young did not satisfy the requirements for a new trial under Rule 33. Therefore, the district court correctly denied his motion on this ground.

The district court focused on whether Young satisfied the third and fourth prongs of the test. With regard to the materiality of the new evidence and the probability of acquittal, the district court found:

> The evidence against Young in this case was not limited to Traylor's testimony. The purchase of cocaine from an undercover DEA agent was on [video]tape and showed Young's active involvement in the transaction. There was also testimony from the DEA agent. Moreover, defense counsel was able to impeach Traylor based on his admitted involvement in the drug transaction and his self-interest in getting a reduced sentence by testifying against

Young. Even assuming that Traylor could have been impeached on the basis of the grand larceny conviction and one or two additional Mississippi convictions, that would only be cumulative impeachment evidence. It cannot be found that this cumulative evidence would "probably" lead to an acquittal. No basis is presented for granting a new trial based on newly discovered evidence.

We agree with the district court's analysis. Young's defense counsel made certain that the jury knew Traylor pled guilty, was testifying out of self-interest, and had engaged in other cocaine deals. Young has failed to demonstrate that the new evidence of Traylor's Mississippi offenses, provided they were even admissible for impeachment purposes, would have been anything other than cumulative impeachment evidence. A new trial is not warranted where the newly discovered evidence is merely impeaching or cumulative. *Kamel*, 965 F.2d at 493.

Additionally, Young has failed to show that the newly discovered evidence would probably lead to his acquittal in the event of a retrial. *E.g., Kamel*, 965 F.2d at 494; *United States v. Taglia*, 922 F.2d 413, 416 (7th Cir.), *cert. denied sub nom.*, 500 U.S. 927, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991). Clearly Traylor's testimony against Young was damaging. Traylor testified that Young approached him about obtaining cocaine and that Young was present when he first contacted June. He also testified about his financial arrangement with Young. However, Traylor did not provide the critical evidence of the events in the parking lot where the cocaine deal occurred. Rather the tape recorded conversations, the surveillance videotape, and the testimony of the undercover and surveillance agents provided this evidence. As the district court correctly concluded, the evidence as to Young's guilt was not limited to Traylor's testimony. Even if the evidence of Traylor's Mississippi criminal record and his dishonesty with the government had been before the jury, it is not probable that Young would have been acquitted.

## 2. Alleged Violation of *Brady v. Maryland*

Young also sought a new trial on the ground that the prosecution violated *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), by failing to disclose Traylor's Mississippi criminal history. The district court denied his motion, holding that the prosecution did not suppress evidence of Traylor's criminal history and that the evidence was immaterial.

Under *Brady*, the suppression of exculpatory evidence by the prosecution violates a defendant's right to due process. *Id.* In *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 765–66, 31 L.Ed.2d 104 (1972), the Supreme Court extended the prosecution's disclosure obligation to encompass evidence that is useful to the defense in impeaching government witnesses even if the evidence is not inherently exculpatory. In order to win a new trial under *Brady*, a defendant must establish that (1) the prosecution suppressed evidence; (2) such evidence was favorable to the defense; and (3) the suppressed evidence was material. *United States v. White*, 970 F.2d 328, 337 (7th Cir.1992); *United States v. Jackson*, 780 F.2d 1305, 1308 (7th Cir.1986).

We agree with the district court that Young has not satisfied the requirements for relief under *Brady* because the prosecution did not suppress the evidence relating to Traylor's criminal history. In *United States v. Lockhart*, 956 F.2d 1418, 1425 (7th Cir. 1992), the defendant contended that the government failed to reveal that one of its witnesses had a felony conviction for grand larceny and requested a new trial. In addressing the defendant's claim, this Court noted that *Brady* requires the defendant to establish that the prosecution knowingly suppressed information material to the defense. This Court explained that if the government does not know of a witness' conviction, there is no *Brady* violation. *Id.*

In this case, the district court found no evidence to suggest that the government knew of Traylor's Mississippi arrests and convictions. Young does not contest this finding. Instead, Young urges this Court to impute prosecutorial knowledge of Traylor's criminal record because, he maintains, the government could have easily obtained the Mississippi records but failed to do so. We reject Young's request for an exception to *Lockhart* because on the facts of this case, we believe the prosecution more than adequately fulfilled its investigatory and disclosure responsibilities.

As a general rule, the prosecution's obligation in a criminal proceeding to disclose information is limited to information known to the prosecution. *Mendoza v. Miller*, 779 F.2d 1287, 1297 (7th Cir.1985), *cert. denied*, 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986). *See also United States v. Romo*, 914 F.2d 889, 898 (7th Cir.1990), *cert. denied*, 498 U.S. 1122, 111 S.Ct. 1078, 112 L.Ed.2d 1183 (1991) (reiterating that prosecutors are not usually required to seek out information not in their possession). However, "a prosecutor's office cannot get around *Brady* by keeping itself in ignorance, or compartmentalizing information about different aspects of the case." *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir.1984). This was the concern addressed in *United States v. Perdomo*, 929 F.2d 967 (3rd Cir.1991) and *United States v. Auten*, 632 F.2d 478 (5th Cir.1980), cases upon which Young relies heavily. In *Perdomo*, the government failed to check the local criminal records for information concerning its key witness. 929 F.2d at 970. In *Auten*, the prosecutor chose not to run a NCIC search on one of its key witnesses because of the brief time before trial. 632 F.2d at 481. In both cases, the appellate court held that the first element of a *Brady* violation was established because the government intentionally failed to seek out information readily available to it.

This case is simply not analogous to *Perdomo* and *Auten*. Here, the government did not "keep itself in ignorance" about Traylor's criminal history. Rather, the government diligently searched the pertinent criminal records for information on Traylor, asked Traylor directly about his criminal history, and disclosed all of its information to Young. Moreover, the government had every incentive to investigate Traylor fully because it was prosecuting Traylor as Young's co-defen-

dant until just two weeks before trial. Under such circumstances, we refuse to impute prosecutorial knowledge of the Mississippi criminal records for purposes of satisfying the first element of a *Brady* violation.

## B. Exclusion of Evidence of Anita Russell's Release

Young also contends that he was prejudiced by the district court's ruling excluding evidence that Anita Russell was released and not charged after her arrest. Prior to Young's trial, the government moved to preclude Young from introducing evidence that Anita Russell, who was arrested along with Young and Traylor, was released and not criminally charged by the government. The district court granted the *in limine* motion and instructed Young that he could only introduce evidence of Russell's arrest. In his initial post-trial motion, Young argued that the district court's decision to grant the government's *in limine* motion regarding Anita Russell was erroneous and thus he should be given a new trial or judgment of acquittal. In denying Young's post-trial motion, the district court reiterated that the result of Russell's arrest was irrelevant to the issues presented in Young's trial.

Young asks this Court to reverse the district court's ruling and grant him a new trial. We will not reverse the district court's evidentiary rulings unless there has been a clear abuse of discretion. *United States v. Burrell,* 963 F.2d 976, 997 (7th Cir.), *cert. denied sub nom.,* —— U.S. ——, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992). Here the district court's order was properly within its discretion.

Young's defense at trial was that he did not knowingly participate in the attempted cocaine purchase. Accordingly, the primary issue for the jury was whether the government met its burden of proof as to Young's knowledge. Whether or not Russell was criminally charged does not make the facts relating to Young's knowledge and participation in the attempted purchase more or less probable. *See* Fed.R.Evid. 401 (Evidence is relevant if it has "any tendency to make the existence of a fact that is of consequence to the determination of the action

more probable or less probable than it would be without the evidence"). Young was free to call Russell as a witness to bolster his defense that he played an unwitting role in the cocaine purchase but he chose not to do so. Given this, Young can hardly complain that the *in limine* order prejudiced his defense. For these reasons, we affirm the district court's evidentiary ruling.

## C. Sufficiency of the Evidence

Young's third contention is that the evidence put forth at trial was insufficient to establish his guilt beyond a reasonable doubt. We find this contention to be without merit. A defendant challenging his conviction on the ground of insufficient evidence faces a formidable hurdle. *Burrell,* 963 F.2d at 987; *United States v. Hernandez,* 948 F.2d 316, 321 (7th Cir.1991). We review all of the evidence in the light most favorable to the government. If we find that any rational jury could have found Young guilty, we will affirm his conviction. *Burrell,* 963 F.2d at 987. In conducting this inquiry, we will defer to reasonable inferences drawn by the jury and the weight it gave to the evidence. *United States v. Caudill,* 915 F.2d 294, 297 (7th Cir.1990).

Young maintains that the evidence at trial was insufficient to convict him of conspiracy to possess with intent to distribute cocaine or attempted possession with the intent to distribute cocaine. Specifically, he argues that evidence shows that "his only involvement was to act as Traylor's unwitting dupe" and did not prove that he knew what was happening at the Hillside Mall.

To prove the conspiracy charge against Young, the government had to demonstrate the existence of a conspiracy and a participatory link with Traylor. *United States v. Durrive,* 902 F.2d 1221, 1225 (7th Cir.1990). A conspiracy is defined as "a combination or confederation of two or more persons formed for the purpose of committing, by their joint efforts, a criminal act." *Id.* For the attempted possession charge, the government had to show that Young (1) acted with the intent to possess cocaine with the intent to distribute; and (2) engaged in

conduct which constitutes a substantial step toward the commission of the offense. *United States v. Haddad,* 976 F.2d 1088, 1094 (7th Cir.1992).

The evidence of Young's knowing participation in the conspiracy to distribute cocaine is substantial. Young approached Traylor about purchasing cocaine, he was present when Traylor first attempted to contact June, he and Traylor agreed to divide the profits from the cocaine sales, and he accompanied Traylor to Chicago and to the Hillside Mall. More importantly, Young's actions and words at the Hillside Mall demonstrate his active participation in the cocaine deal. He stood look-out while Traylor dealt with Agent Tovar and June, he went to Agent Guerra's car to inspect the cocaine packages, and he indicated to Agent Guerra that he and Traylor were there to get the one kilogram package. Viewing the evidence as a whole and in the light most favorable to the government, a jury could easily have found that Young knowingly participated in the conspiracy and that he took substantial steps towards possessing the cocaine he and Traylor intended to distribute.

### D. Ineffective Assistance of Counsel

Young's final argument on appeal is that his trial counsel was constitutionally ineffective. *See generally Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1986). In his post-trial *pro se* motion for a new trial, Young complained that his attorney was unprepared because he failed to obtain certain tapes and transcripts before trial. The district court rejected Young's claim, stating that Young's trial attorney "vigorously defended the case." On appeal, Young does not challenge the district court's disposition of his ineffective assistance claim.[7] Instead, Young contends for the first time that his trial counsel was ineffective because he failed to call Anita Russell as a witness and failed to discover Traylor's Mississippi criminal record. Young also insists that extrinsic evidence is necessary to develop these two claims and asks this Court to remand his new claims to the district court for further development or to make clear that his allega-

tions may later be pursued in a 28 U.S.C. § 2255 motion.

This Court does not generally consider claims of ineffective assistance of counsel raised for the first time on direct appeal having held repeatedly that such claims are best dealt with at the district court level through a motion for a new trial or through the collateral relief available under 28 U.S.C. § 2255. *United States v. Mojica,* 984 F.2d 1426, 1452 (7th Cir.) (listing cases), *cert. denied sub nom.,* —— U.S. ——, 113 S.Ct. 2433, 124 L.Ed.2d 653 (1993). Nevertheless, we may resolve ineffective assistance claims without the benefit of the district court's views where the record is sufficiently developed or where both parties ask us to resolve the matter. *Id.* In this case, both parties have not requested that we resolve the claims. Furthermore, the record before us is not adequately developed because Young's allegations, which concern trial preparation and strategy, depend on evidence outside of the record. Therefore, we decline to rule on Young's newly raised ineffective assistance claims and dismiss them without prejudice.

### III.

For the foregoing reasons, we AFFIRM Allen Young's conviction and DISMISS without prejudice his newly raised claims of ineffective assistance of counsel.

---

7. We agree with the district court's disposition of this claim.