104 F.3d 362
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Vincent C. DONOVAN, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
UNITED STATES of America, Plaintiff-Appellee,
v.
Vincent DONOVAN, Defendant-Appellant.
 No. 95-2744, 95-2426.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 11, 1996.*
Decided Dec. 19, 1996.
Rehearing and Suggestion for Rehearing En Banc Denied Feb. 24, 1997.
 
 Appeal from the United States District Court, for the Eastern District of Wisconsin, No. 95 C 432; J.P. Stadtmueller, Chief Judge.
 Before BAUER, CUDAHY and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Vincent Donovan was convicted by a jury of conspiring to distribute cocaine, possessing cocaine with the intent to distribute, and travelling in interstate commerce to facilitate an illegal act. Donovan filed successive motions for a new trial, but these were denied by the district court. He was then sentenced to 212 months' imprisonment. His conviction and sentence were affirmed by this court. United States v. Donovan, 24 F.3d 908 (7th Cir.1994).
 
 
 2
 In July 1994, Donovan filed pro se his third motion for a new trial based on newly discovered evidence under Federal Rule of Criminal Procedure 33 and Brady v. Maryland, 373 U.S. 83 (1963). Less than a year later, in April 1995, Donovan filed, also pro se, a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.
 
 
 3
 In May 1995, the district court denied Donovan's motion for a new trial. The following month, the district court summarily dismissed Donovan's § 2255 petition. Donovan separately appealed both rulings, and we consolidated the appeals. We assume familiarity with the facts from our prior opinion and do not restate them here.
 
 I. Motion for New Trial
 
 4
 On appeal, Donovan argues that he should have been granted a new trial because of his late discovery of exculpatory evidence that the government failed to produce. He argues that the government (1) failed to inform him that key witness Wanda Young had state prostitution charges pending against her at the time she testified; (2) failed to disclose to him a document from a Milwaukee storage facility which he claims exculpates him from charges that he owned a van in which cocaine had been stored; and (3) withheld a forfeiture document from the defense indicating that the amount of money seized from codefendant Rick Kizel totalled $750,000, a much higher sum than that previously disclosed to Donovan.
 
 A. Federal Rule of Criminal Procedure 33
 
 5
 Rule 33 of the Federal Rules of Criminal Procedure provides that "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." We review a district court's denial of a motion for a new trial based on newly discovered evidence for an abuse of discretion. United States v. Severson, 49 F.3d 268, 271 (7th Cir.1995). " '[W]e approach such motions with great caution and are wary of second-guessing the determinations of both judge and jury.' " United States v. Gonzalez, 93 F.3d 311, 315 (7th Cir.1996) (quoting United States v. DePriest, 6 F.3d 1201, 1216 (7th Cir.1993)).
 
 
 6
 A defendant relying upon newly discovered evidence to support a motion for a new trial must demonstrate that the evidence (1) came to the defendant's knowledge only after trial; (2) could not have been discovered sooner through the exercise of due diligence; (3) is material, and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a new trial. Id.; United States v. Veras, 51 F.3d 1365, 1375 (7th Cir.), cert. denied, 116 S.Ct. 540 (1995); Severson, 49 F.3d at 271; United States v. Young, 20 F.3d 758, 763 (7th Cir.1994). With this test in mind, we turn to Donovan's three allegedly newly discovered grounds for relief.
 
 
 7
 1. Wanda Young's Pending State Prostitution Charge
 
 
 8
 The district court focused on the third prong of the test and found that the undisclosed information regarding Wanda Young's state prostitution charge was "merely impeaching." The court acknowledged that Young was an important witness, but emphasized that "the evidence only is relevant with regard to Young's credibility (and marginally so, at that, considering the other impeaching evidence available to Donovan and presented to the jury regarding Young, including her cocaine addiction, her penchant for dishonesty, and the compensation she received from law enforcement)." (R. 117, at 10.)
 
 
 9
 We agree with the district court's analysis. At trial, Young admitted on direct examination to a variety of illegal activities, such as using cocaine regularly over a seven-year period and selling cocaine. Young also testified on cross-examination to stealing to support her drug habit, dealing drugs for drugs, spending four months in prison for selling drugs, engaging in prostitution, being paid by law enforcement authorities, and lying to law enforcement authorities. Where, as here, the newly discovered evidence is merely impeaching or cumulative, a new trial is not warranted. Young, 20 F.3d at 763.
 
 2. Storage Facility Document
 
 10
 Donovan's allegation regarding the storage facility document requires some background information. At trial, the government attempted to show that Vincent Donovan and Rick Kizel had stored cocaine in a van placed in a storage shed they were renting. The government introduced documents of the Milwaukee Self Storage facility reflecting that both men had visited that facility on February 22, 1989. In addition, Kizel testified that the van belonged to Donovan. After trial, however, Vincent Donovan obtained one storage facility document that the government did not obtain or introduce. Signed by Kizel, the document states that Kizel entered the storage facility on February 22, 1989 in a red or brown Dodge van bearing Wisconsin license number VDT 941. Donovan now claims that this document exculpates him from charges that he was the van owner; although he did own a van, he contends that it was not a Dodge and its license number was BDP 941, not VDT 941.
 
 
 11
 The district court rejected this claim based primarily upon the second prong of the test for newly discovered evidence. As the court observed, the storage facility document was available to the defense well before trial. Kept at a private facility, the document could have been discovered earlier through the exercise of due diligence. In addition, there is nothing "new" about the storage facility information; Kizel had already testified at trial to the van's description. The district court properly rejected this claim.
 
 
 12
 3. Document Describing the Amount of Currency Forfeited by Kizel
 
 
 13
 Donovan's third claim is that the government withheld a forfeiture document from the defense indicating that the amount of currency seized from Rick Kizel totaled $750,000, a figure ten times greater than that which previously had been disclosed. The document to which Donovan refers is Kizel's indictment.[1]
 
 
 14
 We agree with the district court that the information in the indictment is merely impeaching and therefore immaterial for purposes of Rule 33. As the district court found, the amount of money forfeited by Kizel is relevant only to the issue of Kizel's credibility, and not to Donovan's actual guilt or innocence. We note, too, that Kizel's indictment is a public record which Donovan or his counsel could have obtained before trial. See e.g., Haynes v. Knopf, Inc., 8 F.3d 1222, 1231 (7th Cir.1993).
 
 B. Alleged Violations of Brady v. Maryland
 
 15
 Donovan also claims that he should have been granted a new trial because the undisclosed evidence was discoverable under Brady v. Maryland, 373 U.S. 83 (1963).
 
 
 16
 In Brady, the Supreme Court held that due process requires disclosure of any evidence that is both "favorable to an accused" and is "material either to guilt or to punishment." Id. at 87. Evidence favorable to the accused is material only " 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " Kyles v. Whitley, 115 S.Ct. 1555, 1565 (1995) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). The defendant must demonstrate that he was denied a fair trial by "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. at 1566; see United States v. Gonzalez, 93 F.3d 311, 316 (7th Cir.1996). In analyzing a Brady claim, we do not consider the suppressed evidence item-by-item, but rather we must determine whether the suppressed evidence, viewed collectively, undermines confidence in the verdict. See Kyles, 115 S.Ct. at 1567.
 
 
 17
 We agree with the finding of the district court that the "cumulative effect of the Brady violations alleged by Donovan does not undermine the confidence in the verdict against Donovan." (R. 117, at 13.) As the court noted, even if each of the allegedly withheld documents had been disclosed to the defense, the outcome of the trial would not have changed because the documents, "when taken together, constitute[ ] only minor and insignificant bits of evidence." Id. at 14. The jury heard ample testimony at trial to question the credibility of both Young and Kizel, and the undisclosed documents add little to what the jury already knew. The jury was informed, for instance, that Young had been a frequent and longstanding user of cocaine and that she had prostituted herself to obtain drugs. Similarly, the jury knew about Kizel's role in the conspiracy, and therefore his status as a major or minor drug dealer would not have significantly affected his credibility. Furthermore, Kizel's testimony at trial essentially repeated the description contained in the storage facility document. When considered cumulatively, the undisclosed evidence does not undermine confidence in the jury's verdict.
 
 C. Evidentiary Hearing
 
 18
 Finally, Donovan argues that the district court erred in not holding an evidentiary hearing to more fully explore his request for a new trial based upon newly discovered evidence. Because Donovan's allegations lack merit, the district court did not abuse its discretion in denying Donovan's motion without a hearing. See United States v. Massey, 89 F.3d 1433, 1443 (11th Cir.1996).
 
 II. Section 2255 Motion
 
 19
 We next consider Donovan's argument that the district court improperly dismissed his § 2255 petition. In reviewing the district court's dismissal of Donovan's petition, we review all factual determinations for clear error and consider all questions of law de novo. Bond v. United States, 77 F.3d 1009, 1012 (7th Cir.), cert. denied, 117 S.Ct. 270 (1996). Relief may be available if Donovan can demonstrate flaws in his conviction or sentence "which are jurisdictional in nature, constitutional in magnitude, or result in a complete miscarriage of justice." Boyer v. United States, 55 F.3d 296, 298 (7th Cir.), cert. denied, 116 S.Ct. 268 (1995). However, a § 2255 motion is not a substitute for a direct appeal. Doe v. United States, 51 F.3d 693, 698 (7th Cir.), cert. denied, 116 S.Ct. 205 (1995). An argument that was not raised on direct appeal cannot first be presented on collateral review " 'absent a showing of cause' for the failure to advance the argument sooner 'and some showing of actual prejudice resulting from the alleged constitutional violation.' " Kelly v. United States, 29 F.3d 1107, 1112 (7th Cir.1994) (quoting Wainwright v. Sykes, 433 U.S. 72, 84 (1977)).
 
 
 20
 Donovan concedes that, aside from his allegations of ineffective assistance of counsel, his asserted grounds for relief could have been raised on direct appeal. (R. 111, at 54.) He argues, however, that this procedural default should be excused because of counsel's ineffectiveness (the same lawyer represented Donovan both at trial and on appeal).
 
 A. Ineffective Assistance of Counsel
 
 21
 To show that counsel was constitutionally ineffective, Donovan must show "that counsel's representation fell below an objective standard of reasonableness" and, additionally, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).
 
 1. Counsel's Performance on Appeal
 
 22
 Donovan argues first, with regard to counsel's performance on appeal, that the issues raised on direct appeal had little chance of success, that counsel should have recognized as much, and that the issues he raised in his petition were fundamental defects resulting in a complete miscarriage of justice. We have repeatedly emphasized, however, that appellate counsel need not advance every conceivable argument on appeal. Appellate counsel is constitutionally ineffective only if "counsel fails to raise issues that are (1) obvious, and (2) clearly stronger than the ones raised." Kelly v. United States, 29 F.3d 1107, 1112 (7th Cir.1994). The issues Donovan cites here are neither obvious nor clearly stronger than those presented and decided on direct appeal. Donovan, 24 F.3d 908 (7th Cir.1994).[2] The district court concluded, and we agree, that counsel could reasonably have concluded that there was insufficient merit to pursue these issues, or that raising these issues would have detracted from the arguments made on appeal. See Velarde v. United States, 972 F.2d 826, 829 (7th Cir.1992).
 
 2. Counsel's Performance at Trial
 
 23
 When a § 2255 petitioner is represented by the same counsel on direct appeal as at trial, an ineffective assistance of counsel claim is not forfeited. Guinan v. United States, 6 F.3d 468, 471 (7th Cir.1993). However, the petitioner still bears the heavy burden of proof of demonstrating counsel's ineffectiveness under the standard set forth in Strickland. Donovan points to nine instances of alleged ineffective assistance at trial, and we shall dispose of them briefly.
 
 
 24
 (1) Donovan claims that counsel refused to permit him to testify in his own behalf. The district court observed that if this claim was true, it was sufficient to satisfy the first but not the second prong of the Strickland test. According to the court, there was "no indication whatsoever" that Donovan's testimony would have changed the outcome of the trial. (R. 126, at 10.) Indeed, Donovan never informed the district court what his testimony would have been had he testified, nor did he provide any evidence to lend credibility to his claim that he was not allowed to testify. See Underwood v. Clark, 939 F.2d 473, 476 (7th Cir.1991) ("Some greater particularity is necessary--and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify--to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim."). We therefore agree with the district court that Strickland 's second prong is not met by Donovan's "bare suggestion" that the jury would have acquitted him had he testified. (R. 126, at 10.)
 
 
 25
 (2) Donovan also claims that counsel made a non-strategic error in failing to object to the use of the guilty pleas of testifying coconspirators Al Cadena and Rick Kizel. Donovan suggests that, based on his codefendants' pleas, the jury could have improperly inferred that he was guilty. It is well-settled, however, that a prosecutor may elicit testimony about a guilty plea on direct examination to help the jury assess a witness's credibility. United States v. McNeal, 77 F.3d 938, 945 (7th Cir.1996). We agree with the district court that defense counsel did not render substandard representation by failing to challenge the use of the codefendants' pleas.
 
 
 26
 (3) Donovan next claims that counsel failed to object to questions that the prosecutor posed to informants about Donovan's material possessions and financial status. Donovan argues that the testimony elicited by the prosecutor about his ownership of a racing car and house was prejudicial, and should have prompted objections by counsel. However, evidence of Donovan's wealth acquired during the period of the narcotics conspiracy is admissible because it is probative of his involvement in the conspiracy. United States v. Penny, 60 F.3d 1257, 1263 (7th Cir.1995), cert. denied, 116 S.Ct. 931 (1996).
 
 
 27
 (4) Donovan also claims that counsel failed to move to suppress tape recordings of conversations between Kizel and Donovan's brother, Steve, in which Steve admitted his involvement in various drug transactions. Donovan contends that the agent who recorded the conversations lacked proper authorization to do so, and that the introduction of recordings into his trial was unduly prejudicial. Contrary to Donovan's contentions, however, Kizel consented to having a government agent make the tape recordings. Under these circumstances, a motion to suppress would have been meritless. See United States v. Missick, 875 F.2d 1294, 1300 (7th Cir.1989).
 
 
 28
 (5) Donovan next argues that counsel failed to seek dismissal of his indictment based on an alleged pretrial intrusion by the government upon his confidential communications with counsel. A similar argument was raised before trial by Vincent Donovan's brother, Steve, but that argument was rejected by the district court. Vincent's counsel cannot be faulted for electing not to repeat unsuccessful arguments.
 
 
 29
 (6) Donovan claims that his attorney implicated him throughout the trial by informing the jury that all of the defendants had engaged in drug activity. This admission, however, merely restated the testimony given by most of the witnesses at trial. Furthermore, counsel's admission that Donovan engaged in criminal activity did not detract from counsel's portrayal of Donovan as a participant who was involved in separate distribution agreements rather than in any single conspiracy. See Donovan, 24 F.3d at 913.
 
 
 30
 (7) Donovan argues that counsel failed to investigate and present witnesses that he suggested. However, Donovan neither identified the witnesses he wished to call nor described the content of their proposed testimony.
 
 
 31
 (8) Donovan also makes the vague assertion that counsel failed to give due care to his case. However, the district judge who watched counsel's performance did not find it deficient, and neither do we.
 
 
 32
 (9) Finally, Donovan contends that counsel failed to object to the admissibility of testimony about cocaine allegedly seized from codefendant Stephen Dineen which had earlier been suppressed in state court. However, Donovan has not asserted any legitimate expectation of privacy in either the area searched or the seized cocaine, and he therefore lacks standing to challenge the legality of the seizure from his codefendant. See United States v. Torres, 32 F.3d 225, 230 (7th Cir.1994), cert. denied, 115 S.Ct. 912 (1995).
 
 
 33
 Donovan has failed to demonstrate that trial counsel was ineffective.
 
 B. Other Alleged Errors
 
 34
 Donovan also identifies other errors made at trial which he contends warrant § 2255 relief. For instance, he argues that he was prejudiced by Rick Kizel's testimony that Donovan had previously been arrested, and by the assertion of Al Cadena (under cross-examination by Donovan's own lawyer) that Donovan had a prior drug-related conviction. However, Donovan procedurally defaulted these claims by failing to raise them in his direct appeal. See Prewitt v. United States, 83 F.3d 812, 816 (7th Cir.1996).
 
 
 35
 Donovan next argues that the forfeiture of his automobile under 21 U.S.C. § 881 along with his criminal sentence constituted double jeopardy. This claim is foreclosed by the Supreme Court's recent decision in United States v. Ursery, 116 S.Ct. 2135, 2146-47 (1996). In Ursery, the Court held that in rem civil forfeitures under § 881 was not "punishment" for purposes of the Double Jeopardy Clause. Id. at 2149. The forfeiture of Donovan's automobile did not place him in jeopardy a second time. Id.; United States v. $87,118.00 in U.S. Currency, 95 F.3d 511, 514-15 (7th Cir.1996).
 
 
 36
 Finally, Donovan argues that the district court erred by refusing to conduct an evidentiary hearing on his claims of ineffective assistance of trial counsel. A hearing need not be granted in a § 2255 case, however, if the petitioner makes only conclusory rather than specific factual allegations, or if the record conclusively demonstrates that a petitioner is entitled to no relief. Daniels v. United States, 54 F.3d 290, 293 (7th Cir.1995). Donovan's conclusory allegations of ineffective assistance do not adequately demonstrate how he was prejudiced, especially in light of the overwhelming evidence of his guilt presented at trial. The district court did not err in declining to hold an evidentiary hearing.
 
 CONCLUSION
 
 37
 For the foregoing reasons, we AFFIRM the orders of the district court denying Donovan's motion for a new trial and dismissing Donovan's § 2255 petition.
 
 
 
 *
 This successive appeal has been assigned to the original panel under Internal Operating Procedure 6(b). The panel heard oral argument on the initial appeal and is unanimously of the view that a second argument is unnecessary
 
 
 [1]
 Donovan appended to his motion for new trial a copy of the forfeiture provisions of Kizel's indictment. We note that there is nothing in the record to support Donovan's allegation that the $750,000 listed in the forfeiture provisions means that this amount was actually seized by the government
 
 
 [2]
 Counsel elected to raise a number of other issues on appeal, including the sufficiency of the evidence and whether there were multiple conspiracies; whether there was a variance between the proof at trial and the conspiracy charged in the indictment; whether the court gave a theory of defense instruction; whether defendants should have been severed for trial; whether remarks by the prosecutor prevented a fair trial; and arguments about sentencing