**Arthur Dwight HURST, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 79A02–9903–CR–167.**

Court of Appeals of Indiana.

Aug. 31, 1999.

Charles R. Deets III, Heide Sandy Deets & Kennedy, Lafayette, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

Pursuant to a plea agreement, Arthur Hurst pled guilty to five counts of illegal sale of a wild animal,[1] three counts of illegal possession of a deer,[2] and two counts of illegal possession of a wild animal,[3] all as Class C misdemeanors. Hurst also pled guilty to one count of possession of marijuana[4] as a Class D felony. He claims on appeal that the trial court erred in ordering a two-year forfeiture of his hunting privileges as a condition of his probation.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On June 27, 1996, Hurst was arrested in Tippecanoe County following a near one and a half year investigation by the Indiana Department of Natural Resources into violations of Indiana's gaming laws. The investigation began in November 1994 when Indiana Conservation Officers received a report that Hurst, a licensed fur buyer, may have been engaging in the illegal purchase and sale of wild animals. Undercover conservation officers befriended Hurst in an effort to investigate possible illegal activity occurring in his business.

---

1. *See* IC 14–22–38–6.

2. *See* IC 14–22–2–6; 310 IAC 3.1–3–2(g).

3. *See* IC 14–22–2–6; 310 IAC 3.1–3–16(b).

4. *See* IC 35–48–4–11(1).

In the following months, conservation officers either participated in or observed numerous illegal transactions at Hurst's business where Hurst either sold or purchased rabbits, raccoons, opossums, and untagged deer. In addition, on several occasions conservation officers observed untagged deer hanging in Hurst's walk-in freezer. Officers also witnessed Hurst in possession of rabbits in excess of the daily bag limit.

On January 26, 1995, Hurst sold twenty-three rabbits to a conservation officer for ninety dollars. Later in the day the officers obtained and executed a search warrant for Hurst's place of business. The conservation officers searched Hurst and found the money used to purchase the rabbits earlier in the day. A bag of marijuana was also found in a fox carcass. After obtaining consent to search Hurst's residence, the officers found another bag of marijuana under the couch.

Five months later on June 27, 1996, the state filed a fourteen-count information charging Hurst with the following violations: Count I Illegal Sale of a Wild Animal, Count II Illegal Possession of a Deer, Count III Illegal Possession of a Wild Animal, Count IV Illegal Sale of a Wild Animal, Count V Illegal Possession of a Deer, Count VI Illegal Possession of a Wild Animal, Count VII Illegal Sale of a Wild Animal, Count VIII Illegal Sale of a Wild Animal, Count IX Illegal Possession of a Deer, Count X Illegal Possession of a Wild Animal, Count XI Possession of Marijuana, Count XII Dealing in Marijuana, Count XIII Maintaining a Common Nuisance, and Count XIV Habitual Substance Offender.

After a series of continuances, on August 18, 1998, pursuant to a plea agreement Hurst entered a plea of guilty to the ten gaming violations and to the possession of marijuana charge. The State agreed to dismiss the remaining counts. The trial court sentenced Hurst to a period of sixty days' incarceration for the ten gaming violations as Class C misdemean-ors, and to a period of one and one-half years for possession of marijuana as a Class D felony with the sentences to be served consecutively. The court then suspended the sentence of incarceration and placed Hurst on probation for five years. Additionally, Hurst's walk-in freezer was forfeited to the State, and Hurst was ordered to reimburse the Conservation Officer's Fish and Wildlife Fund the sum of $12,480.00. As a special condition of his probation, the court suspended Hurst's hunting license for a period of two years. Hurst now appeals.

## DISCUSSION AND DECISION

Hurst challenges the two-year revocation of his hunting license as contrary to IC 14–22–11–15(d), which provides:

"Every court having jurisdiction of an offense committed in violation of an Indiana law for the protection of wildlife may, at the court's discretion, revoke the license of the offender for any of the following periods:

(1) Thirty (30) days.

(2) Sixty (60) days.

(3) Ninety (90) days.

(4) One (1) year."

Hurst claims that the trial court exceeded its statutory authority in imposing the two-year license revocation as a condition of his probation. He claims that IC 14–22–11–15(d) explicitly limits the revocation to a maximum one-year period.

When interpreting a statute, the court's foremost objective is to determine and effect legislative intent. *Dvorak v. City of Bloomington,* 702 N.E.2d 1121, 1123 (Ind.Ct.App.1998) (citing *JKB, Sr. v. Armour Pharmaceutical Co.,* 660 N.E.2d 602, 605 (Ind.Ct.App.1996), *trans. denied.*). Courts are to examine a statute as a whole, giving words their common and ordinary meaning, and not overemphasize a strict, literal, or selective reading of individual words. *Id.* Words and phrases are taken in their plain, ordinary, and usual

meaning unless a different purpose is manifested by the statute. *Id.*

While the term "offense" is not specifically defined by IC 14–22–11–15(d), Hurst overlooks the fact that IC 14–22–38–2 treats certain gaming violations as separate offenses. This statute provides as follows:

"The (1) taking, catching, killing, possession, or transportation of each animal or part of an animal; or

(2) possession of each fishing, hunting, or trapping apparatus, appliance, or device;

in violation of this article constitutes a separate offense. Each day's possession of an animal or each day's possession of a fishing, hunting, or trapping apparatus, appliance or device the possession of which is prohibited by this article constitutes a separate offense."

IC 14–22–38–2. By providing that the foregoing violations be considered separate offenses, the General Assembly unambiguously intended the courts to have the power to impose a penalty for each separate offense. This, of course, would include the authority to revoke a hunting license for a one-year maximum period for each separate violation of the gaming laws. A fair reading of IC 14–22–11–15(d) is that the use of the term "offense" refers to each separate violation of the gaming laws. The statute allows the penalty of license revocation to be imposed for each separate offense. Moreover, the statute does not limit the trial court's authority as it relates to setting special conditions of probation.

■ Nevertheless, Hurst seems to argue that there was only one criminal episode or offense involved in the present case. To the contrary, the investigation lasted over one year and resulted in the discovery of numerous violations of Indiana's gaming laws. The trial court had jurisdiction over ten separate offenses and thus had the authority to order the maximum one-year license revocation for each violation. The result could have been a ten-year license revocation. However, the trial court, in the exercise of its discretion, chose not to impose the maximum penalty. Instead, the court imposed a special condition of probation by revoking Hurst's hunting license for only two years, which was within the trial court's statutory authority.

■ The authority to fix a sentence within statutorily prescribed parameters is a discretionary power vested in the trial court. *Gordy v. State,* 674 N.E.2d 190, 191 (Ind.Ct.App.1996) (citing *Barany v. State,* 658 N.E.2d 60, 67 (Ind.1995)). This sentencing authority includes the statutory discretion to suspend and to order probation and establish its terms. *Id.* Probation is a matter of grace and a conditional liberty that is a favor, not a right. *Id.* Ultimately, the decision whether to grant probation and to determine the conditions of probation are matters within the sound discretion of the trial court. *Williams v. State,* 695 N.E.2d 1017, 1018 (Ind.Ct.App. 1998) (citing *Isaac v. State,* 605 N.E.2d 144, 146 (Ind.1992), *cert. denied,* 508 U.S. 922, 113 S.Ct. 2373, 124 L.Ed.2d 278 (1993)).

■ The trial court has broad discretion in imposing conditions of probation in order to create law abiding citizens and to protect the community with the only limitation being that the conditions have a reasonable relationship to the treatment of the accused and the protection of the public. *Gordy,* 674 N.E.2d at 191. Indiana Code 35–38–2–2.3(a) provides a list of twenty requirements that a trial court may impose as conditions of probation. Among these include refraining from possession of a firearm without court permission and satisfying other conditions reasonably related to the person's rehabilitation. IC 35–38–2–2.3(a)(8), (a)(14). Denying Hurst hunting privileges for a period of two years is reasonably related to his rehabilitation. The revocation also serves the goal of safeguarding the public and protecting the wildlife.

Probated and suspended sentences have historically been used by trial courts as a rehabilitative tool and an alternative to imprisonment. Hurst's two-year probation condition does not exceed the length of the thirty-eight month executed prison sentence that Hurst could have received. As the State points out, such a sentence would have deprived Hurst of his privilege to hunt for over three years. The trial court did not exceed its statutory authority in imposing the two-year license revocation as a condition of Hurst's probation.

Affirmed.

DARDEN, J., and BROOK, J., concur.