Dwight A. CARROLL, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Appellee.

No. 48A04–9912–CR–564.

Court of Appeals of Indiana.

Dec. 14, 2000.

Transfer Denied Feb. 14, 2001.

## OPINION

MATHIAS, Judge

Dwight A. Carroll was convicted of dealing in cocaine, a Class B felony, and possession of cocaine with intent to deliver, a Class A felony. He was sentenced to concurrent terms of twenty years for dealing and thirty years with ten years suspended for possession with intent to deliver. He was placed on probation for eight years, and that probation was later revoked. In this appeal, which consolidates both his direct appeal and appeal of his probation revocation, Carroll raises four issues for our review:

I. Whether the State violated *Brady v. Maryland* when it failed to disclose that one of its witnesses had been previously convicted of the misdemeanor offense of false reporting or informing;

II. Whether the trial court's instruction on constructive possession was erroneous because it did not reiterate that possession requires a knowing exercise of control;

III. Whether his dual convictions violate Indiana Code section 35–38–1–6 or the Indiana Double Jeopardy Clause; and

IV. Whether the trial court could require as a condition of probation that Carroll cooperate with the Drug Task Force, "answer fully, truthfully and completely all questions posed," and testify at trial if required to do so.

We affirm in part, reverse in part, and remand with instructions.

### Facts and Procedural History

On April 19, 1999, the Madison County Drug Task Force sent Ron Jones, an informant, to buy cocaine from Paula Hoppes at her residence. Jones gave Hoppes $100.00 in cash with recorded serial numbers, and she in turn obtained cocaine from a man inside the residence. Jones did not know the man, but merely noted he was an African–American wearing a black jacket. Jones observed the man take a large plastic bag of cocaine from the pocket of his black jacket.

After leaving Hoppes' residence, Jones spoke to a member of the Madison County Drug Task Force, who decided to obtain a search warrant for Hoppes' residence. Approximately two hours later, a warrant was executed by a S.W.A.T. team, which forced entry into the home. The S.W.A.T. team found Carroll in the east bedroom, near a stack of money, $90.00 of which had serial numbers that matched the bills Jones used when he purchased cocaine from Hoppes. A black jacket with white stripes was found approximately two feet from Carroll. Police found 3.74 grams of cocaine and a cellular phone in the jacket.

According to Hoppes' sixteen-year-old son, Carroll was wearing the jacket when the S.W.A.T. team broke in. Carroll threw the jacket down as he ran to the east bedroom. Hoppes also testified that the black jacket belonged to Carroll. Moreover, the cellular phone records for the phone found in the pocket of the jacket showed several calls to Carroll's niece at the same number Carroll called while in jail awaiting trial.

Carroll was convicted of dealing in cocaine, a Class B felony, and possession of cocaine with intent to deliver, a Class A felony. He was sentenced to concurrent terms of twenty years for dealing and thirty years with ten suspended for possession. He was placed on probation for eight years. One condition of probation was that Carroll give a clean-up statement to the Madison County Drug Task Force.

Within days of sentencing, a member of the Task Force attempted to secure the clean-up statement. The officer did not believe that Carroll was being honest with him and sought to have Carroll's probation revoked. After a hearing held a few months later, the trial court revoked Carroll's probation and ordered that he serve eight years of the previously suspended ten-year sentence. This is a consolidated

direct appeal of the convictions and an appeal of the probation revocation.

## I. *Brady* Claim

■ Carroll first contends that he is entitled to a new trial because the State failed to disclose before trial that Hoppes had a prior criminal history. The State responds that it did not discover and disclose the criminal history before trial because Hoppes had been convicted under an alias.

■ *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady* applies to evidence impeaching the credibility of State's witnesses. *See United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (citing *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)). The United States Supreme Court has recently summarized three components of a *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

■ The State concedes that the first *Strickler* component is established. Hoppes' prior criminal history, particularly her conviction for false informing or reporting, a crime of dishonesty pursuant to Evidence Rule 609, is potential impeaching evidence that falls within the ambit of *Brady* and its progeny. Nevertheless, the State contends that this evidence was not suppressed by the State because defense counsel could have discovered the convictions with due diligence. We disagree.

In *Crivens v. Roth*, 172 F.3d 991 (7th Cir.1999), the State failed to disclose that a crucial witness had a prior criminal history cataloged under a different name. The Seventh Circuit pointed out that "[c]riminals often use aliases, but the police are able to link the various names to a single individual through a variety of means." *Id.* at 997. "If, as the state would have us believe, extracting [a defendant's] criminal history was a complicated endeavor, how could [the defendant] have accomplished such a difficult feat on his own?" *Id.* The court distinguished cases in which a witness's criminal history was in the possession of another state. *See United States v. Young*, 20 F.3d 758, 764 (7th Cir.1994).

■ The criminal record of the witness in *Crivens*, like Hoppes' in this case, is from the same county as the trial of the subsequent case at which the witness testified. Thus, the criminal history was clearly within the State's reach. "[T]he availability of information is not measured in terms of whether the information is easy or difficult to obtain but by whether the information is in the possession of some arm of the state." *Id.* at 997–98 (quoting *United States v. Perdomo*, 929 F.2d 967, 971 (3d Cir.1991)); *see also Martinez v. Wainwright*, 621 F.2d 184, 186–87 (5th Cir. 1980). Because the State had Hoppes' record at its disposal but failed to disclose it, the second *Strickler* prong is satisfied.

■ Thus, this case turns on whether the nondisclosure was prejudicial to Carroll, i.e., whether the suppressed evidence was material. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Bagley*, 473 U.S. at 682, 105 S.Ct. 3375. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id.* In proving materiality, it is not necessary for the defendant to show that "after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." *Kyles v.*

*Whitley,* 514 U.S. 419, 434–35, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Rather, the defendant must show that the "favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435, 115 S.Ct. 1555 (footnote omitted).

 At issue in this case is a six-year-old misdemeanor conviction for false informing or reporting.[1] Its impeaching value is, in light of all of the evidence in the case, negligible, at best. Hoppes was not portrayed as a highly credible witness or an otherwise upstanding citizen. The State elicited testimony on direct examination that she was hoping for a favorable deal from the State in exchange for her testimony against Carroll. Moreover, she admitted that she had sold drugs and allowed others to sell drugs from her home in the presence of her children, age five and sixteen. This conduct led the prosecutor, during closing argument, to refer to Hoppes as a "crackhead" and "a terrible mother." R. at 1372. A six-year-old misdemeanor conviction for false reporting could not have depreciated the jury's view of Hoppes by much.

In addition to Hoppes' testimony, there was also other evidence of Carroll's guilt, which further casts doubt on the significance of the State's nondisclosure. Jones saw Hoppes retrieve cocaine from an African–American male wearing a black jacket. Hoppes' sixteen-year-old son, without any suggestion from his mother or the police, told police that the black jacket found within two feet of Carroll was Carroll's.

Hoppes' son also testified that he had seen Carroll take off the jacket and throw it to the floor when the S.W.A.T. team was knocking in the door. Finally, $90.00 of the $100.00 that Jones gave Hoppes was found underneath Carroll.

In sum, this independent evidence, combined with the State's presentation of Hoppes as a less-than-sterling witness, leads us to conclude that the State's nondisclosure of a six-year-old misdemeanor false reporting conviction fails to establish the prejudice prong of *Strickler. Cf. McIntyre v. State,* 717 N.E.2d 114, 129 (Ind. 1999) (observing that while undisclosed evidence of a witness's "legal troubles could have affected the jury's view of his veracity, [the witness's] reliability as a witness was otherwise put into question"). Accordingly, Carroll's *Brady* claim fails.

## II. Constructive Possession Instruction

 Carroll next argues that the trial court abused its discretion in instructing the jury on constructive possession. Jury instruction lies largely within a trial court's discretion. *Benefiel v. State,* 716 N.E.2d 906, 914 (Ind.1999), *cert. denied,* — U.S. ——, 121 S.Ct. 83, 148 L.Ed.2d 45 (2000). Instructions "are to be read together as a whole and not as single units, and a single instruction need not contain all the law applicable to the case." *Hurt v. State,* 570 N.E.2d 16, 18 (Ind.1991). We will reverse for instructional error only when the instructions, taken as a whole, misstate the law or otherwise mislead the jury. *Covelli*

1. Carroll correctly acknowledges that only the misdemeanor false reporting conviction is admissible pursuant to Indiana Evidence Rule 609. Nevertheless, he contends that the State opened the door to other parts of Hoppes' criminal history, namely drug convictions and probation violations, by presenting her as "a reformed drug user who, by the time of trial, understood the error of her ways." Brief of Appellant at 12. We disagree.

"[E]vidence relied upon to open the door must leave the trier of fact with a false or misleading impression of the facts related."

*Roth v. State,* 550 N.E.2d 104, 106 (Ind.Ct. App.1990) (citing *Quarles v. State,* 493 N.E.2d 1247, 1248 (Ind.1986)). On direct examination Hoppes testified that she had not used drugs for the past six months. However, she admitted that she had used and sold drugs up to and including the date of Carroll's arrest and that she was currently on work release. The State's questioning did not leave the jury with a false or misleading impression of Hoppes' prior drug problems, and thus it did not open the door for the admission of her drug convictions or probation violations.

*v. State,* 579 N.E.2d 466, 475 (Ind.Ct.App. 1991), *trans. denied.*

 The trial court noted that there was no pattern instruction on constructive possession and thus created an instruction from language found in case law. The instruction reads as follows:

> A conviction for the possession of cocaine may rest upon either actual or constructive possession. When the accused does not have exclusive control, it may not be inferred that he knew of the presence of drugs and had control of them, unless there are other incriminating statements or circumstances tending to support such an inference.

R. at 74. Carroll objected to the instruction because it did not include language, found in some cases, that when control of the premises is not exclusive the State must present additional independent evidence from which the trier of fact may infer the defendant knowingly possessed the drugs. R. at 1354.[2] Carroll contends "[a]t the very least, a 'knowing possession' is required, not just knowledge of the presence of drugs." Brief of Appellant at 23.

Other instructions made clear that the State was required to prove that the defendant knowingly or intentionally delivered, or possessed with intent to deliver, the cocaine. Looking at the instructions as a whole, we find no abuse of discretion. *Cf. Williams v. State,* 658 N.E.2d 598, 604 (Ind.Ct.App.1995) (finding no error in constructive possession instruction that failed to indicate that the State had the burden to prove constructive possession beyond a reasonable doubt).

2. Carroll's contentions on appeal are somewhat different. When objecting to an instruction, the objection at trial must be sufficiently clear and specific to inform the trial court of the claimed error, identifying both the claimed objectionable matter and the grounds for the objection. *Scisney v. State,* 701 N.E.2d 847, 848–49 (Ind.1998). Indiana Trial Rule 51(C) requires counsel to identify the specific objection and its grounds in order to

## III. Dual Convictions

 Carroll was convicted of two offenses under the same statute. Indiana Code section 35–48–4–1(a) provides in relevant part that a person who knowingly or intentionally delivers cocaine commits dealing in cocaine a class B felony, "except as provided in subsection (b)." Subsection (b)(1) provides that the offense is a Class A felony if "the amount of the drug involved weighs three (3) grams or more." Carroll contends that these dual convictions violate Indiana Code section 35–38–1–6 and Article I, Section 14 of the Indiana Constitution.

 As a preliminary matter, we note that is our duty "not to enter upon the consideration of a constitutional question where the court can perceive another ground upon which it may properly rest its decision." *Harvey v. State,* 719 N.E.2d 406, 410–11 (Ind.Ct.App.1999) (quoting *Bayh v. Sonnenburg,* 573 N.E.2d 398, 402 (Ind.1991)). Put another way, we should not invoke "constitutional artillery" where a "statutory rifle" will do the job. *Richardson v. State,* 717 N.E.2d 32, 64 (Boehm, J., concurring in result). Accordingly, we begin with the statutory claim.

 Indiana Code section 35–38–1–6 provides whenever:

(1) a defendant is charged with an offense and an included offense in separate counts; and

(2) the defendant is found guilty of both counts; judgment and sentence may not be entered against the defendant for the included offense.

An offense may be either inherently or factually included for purposes of this

enhance trial fairness, to enable the trial court to avoid error, to provide a sufficient opportunity to correct any potential error, and to facilitate effective appellate review. *Id.* at 848. Any grounds for instructional error raised for the first time on appeal are waived. *See* Ind.Crim. Rule 8(B) ("No error with respect to the giving of instructions shall be available ... on appeal, except upon the specific objections made....").

statute. *Harvey*, 719 N.E.2d at 411. An offense is inherently included in another offense if the lesser offense may be established "by proof of the same material elements or less than all the material elements" defining the "greater" offense charged. *Id.* (quoting Ind.Code § 35–41–1–16(1)). An offense is factually included in another offense when the charging instrument alleges "the means used to commit the crime charged include all of the elements of the alleged lesser included offense." *Id.* (quoting *Wright v. State*, 658 N.E.2d 563, 566–67 (Ind.1995)).

Carroll argues that possession of cocaine is an inherently lesser-included offense of dealing in cocaine.[3] We disagree. The possession with intent to deliver offense requires possession of an amount greater than three grams, which is not an element of the offense of dealing cocaine. The dealing offense also requires actual delivery whereas the possession offense merely requires the intent to deliver. The offenses are not inherently included.

Similarly, the dealing offense is not a factually included lesser offense of the possession offense in this case because the "means used to commit" dealing in cocaine require actual delivery, an element not included in the possession charge. Because the offenses are neither inherently nor factually included, we find no violation of Indiana Code section 35–38–1–6. However, our inquiry does not end there.

 Carroll also challenges his dual convictions under the Indiana Double Jeopardy Clause. In *Richardson v. State*, 717 N.E.2d 32 (Ind.1999), our supreme court held that "two or more offenses are the 'same offense' in violation of Article I,

Section 14 of the Indiana Constitution if, with respect to *either* the statutory elements of the charged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* at 49 (emphasis in original). Carroll raises no claim under the statutory elements test, but rather contends that the two convictions violate the actual evidence test.

Under this inquiry, the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Id.* at 53. In addition to the evidence presented at trial, the reviewing court may also look at the trial court's instructions to the jury and the closing arguments of counsel. *See id.* at 54 n. 48; *Lowrimore v. State*, 728 N.E.2d 860, 868 (Ind.2000).

Citing pre-*Richardson* precedent, the State concedes that the dual convictions violate double jeopardy principles based on the charging information,[4] which contains only general allegations that track the language of the statute. *See Quick v. State*, 660 N.E.2d 598, 601 (Ind.Ct.App.1996); *Johnson v. State*, 659 N.E.2d 242, 245 (Ind. Ct.App.1995). Nevertheless, the State asks that we find no double jeopardy violation because "the evidence at trial shows

---

**3.** Carroll cites *Mason v. State*, 532 N.E.2d 1169 (Ind.1989), *Collins v. State*, 520 N.E.2d 1258 (Ind.1988), and *Young v. State*, 564 N.E.2d 968 (Ind.Ct.App.1991), *trans. denied*, in support of this contention. However, these cases deal with different statutory schemes than the one at issue here. The lesser-included offense statute is implicated in these cases because the dealing offense required that the defendant knowingly or intentionally deliver the drug and the possession offense merely

required possession of the same drug. However, Carroll's case is different in that he was charged with possessing more than three grams of cocaine with intent to deliver.

**4.** The charging information was read to the jury as part of the trial court's instructions, and thus may properly be considered in our *Richardson* analysis.

that the two counts are based on separate conduct, namely the sale of cocaine to the informant and the retention of 3.74 grams of cocaine for sale to others. . . ." Brief of Appellee at 10.

The State's theory of "separate conduct" was not presented to the jury through the trial court's instructions or the State's closing argument. The State chose to charge the crimes broadly and its closing argument was no more specific. Thus, there is at least a "reasonable possibility" that the jury used the same evidence to establish the essential elements of the two offenses. *Cf. Spears v. State,* 735 N.E.2d 1161, 1165 (Ind.2000) ("Absent a specific instruction requiring the jury to base a Class A felony robbery conviction on a serious bodily injury other than death, there is a reasonable possibility that the jury used the same evidentiary facts to support a murder conviction and a Class A robbery conviction.")

■■■ The State also suggests that we may find no double jeopardy violation because the trial court imposed concurrent sentences. The State cites *Roop v. State,* 730 N.E.2d 1267 (Ind.2000) as support, but it misreads the case. In *Roop,* our supreme court observed in a footnote that the dual convictions in that case seemed to raise a double jeopardy claim, but appellate counsel did not raise such a claim. *Id.* at 1270 n. 2. The court noted that the appellant's brief was filed several weeks after the court's landmark opinion in *Richardson.* Thus, our supreme court declined to raise a double jeopardy claim sua sponte, as it had done in other cases in which the appellant's brief was filed before *Richardson. See, e.g., Logan v. State,* 729 N.E.2d 125, 136–37 (Ind.2000), *Marcum v. State,* 725 N.E.2d 852, 864 (Ind.2000); *Wise v. State,* 719 N.E.2d 1192, 1200–01 (Ind.1999). Neither *Roop* nor any other case decided before or after suggests that the imposition of concurrent sentences

cures a double jeopardy violation.[5] Accordingly, this case must be remanded with instructions to vacate the dealing in cocaine Class B felony count.

## IV. Clean–Up Statement as a Condition of Probation

■■■ As a final point, Carroll attacks the requirement that he give a clean-up statement as a condition of probation. The provision at issue reads as follows:

> Defendant ordered to cooperate with members of the law enforcement community. Within ten (10) days of today's date, upon request of Sgt. Jeff Ash and/or other members of the Drug Task Force, defendant shall give a videotape statement and answer fully, truthfully and completely all questions posed. Defendant shall also testify at trial if requested to do so. Defendant shall provide written verification of compliance to the Probation Department.

R. at 112. This provision was not coupled with a grant of immunity; thus, Carroll contends that any statement given by him could result in his prosecution for other offenses or that a police officer's assessment of his credibility could result in revocation.

Within days of the entry of the probation order, a member of the Madison County Drug Task Force attempted to question Carroll pursuant to the probation order. Carroll told the officer that he had used drugs but had never dealt them. Carroll said that drugs were laying around Hoppes' house, and he did not know from where they came. The trial court found that Carroll had violated the clean-up statement provision of his probation, revoked his probation, and ordered that eight years of the previously suspended sentence be executed.

5. It is clear under pre-*Richardson* precedent that a second conviction is an "additional punishment" even if the two convictions are ordered served concurrently. *McBroom v. State,* 530 N.E.2d 725, 727 (Ind.1988); *Davis v. State,* 642 N.E.2d 987, 990 (Ind.Ct.App. 1994).

Carroll first contends that the clean-up statement violates his Fifth Amendment privilege against self-incrimination. In *Patton v. State*, 580 N.E.2d 693 (Ind.Ct. App.1991), *trans. denied*, a defendant raised a Fifth Amendment challenge to a probation condition requiring that any polygraph tests taken during probation be admissible as evidence in court. We rejected the Fifth Amendment challenge, noting that the condition did not require the defendant to answer incriminating questions. "If any question is asked during a polygraph examination which Patton believes requires an incriminating answer, he is free to assert his [F]ifth [A]mendment privilege." *Id.* at 698. We reach the same conclusion here. Even though the probation order did not provide for a grant of immunity, Carroll nonetheless retained his privilege against self-incrimination and was free to refuse to respond to incriminating questions.[6]

Although this probation condition does not, on its face or under the facts and circumstances before us, offend the privilege against self-incrimination, we nevertheless find it improper under Indiana law. Indiana Code section 35–38–2–2.3(a) lists twenty obligations that a trial court may impose on a defendant as conditions of probation. *Freije v. State*, 709 N.E.2d 323, 324 (Ind.1999). A clean-up statement is not specifically included among those permitted obligations.

In response, the State points to section 2.3(a)(14), which allows trial courts to require probationers to "[s]atisfy other conditions reasonably related to the person's rehabilitation." However, the trial court's comments at the revocation hearing clearly show that the purpose of the clean-up statement was not Carroll's rehabilitation: "I intended it to be coercive.... [A]ll of the conditions of probation are intended to be coercive, and designed to persuade peo-

ple to do what the Court has said." R. at 31–32.

Although this condition may be beneficial to law enforcement and perhaps the community, it is not related to Carroll's rehabilitation. *Cf. Hurst v. State*, 717 N.E.2d 883, 886 (Ind.Ct.App.1999) (upholding two year hunting license suspension as being reasonably related to the rehabilitation of defendant convicted of several counts of illegal possession and sale of wild animals). It requires him to "come clean" about other crimes and the criminal activity of other people, but offers no protection to him in return. Indeed, as occurred here, a simple denial of knowledge by the defendant may result in revocation of probation based on a police officer testifying that he does not believe the defendant's statements made during a clean-up statement. The trial court can then revoke probation based on this ad hoc assessment of credibility. Under these circumstances, we find that requiring a non-immunized clean-up statement as a condition of probation exceeded the trial court's statutory authority.

Our opinion today should not be read to suggest that clean-up statements may never be imposed as a condition of probation. Indeed, "[t]he sentencing judge has a broad power to impose conditions designed to serve the accused and the community. The only limitation is that the conditions have a reasonable relationship to the treatment of the accused and the protection of the public." *Gordy v. State*, 674 N.E.2d 190, 191 (Ind.Ct.App.1996) (quoting *McCloud v. State*, 452 N.E.2d 1053, 1056 (Ind.Ct.App.1983)). Although a unilaterally imposed clean-up statement requirement arguably protects the public, it does not seem to aid the treatment of the defendant and is further open to serious abuse by well-meaning law enforcement authori-

6. Although not discussed by the parties we note a non-immunized clean-up statement such as this one raises other Fifth Amendment concerns under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694

(1966), which requires that an individual subjected to custodial interrogation be advised of his right to remain silent and right to counsel. No *Miranda* warnings appear to have been given in this case.

ties. Such provisions, coupled with a grant of immunity, are commonly and properly included in negotiated plea agreements around the state. However, here there was no grant of immunity and the condition was not negotiated and agreed upon by Carroll.

### Conclusion

For all of these reasons, this case is remanded with instructions to vacate the B felony dealing cocaine conviction and to amend the probation order to strike the condition requiring a clean-up statement. In addition, the trial court's revocation of probation is reversed, and Carroll shall be placed back on probation with all the remaining terms and conditions other than the clean-up statement remaining in full force and effect. In all other respects, the trial court is affirmed.

Affirmed in part, reversed in part, and remanded with instructions.

MATTINGLY, J., and ROBB, J., concur.