# FOR PUBLICATION



ATTORNEYS FOR APPELLANTS:

**STEPHEN T. OWENS**
Public Defender of Indiana

**KATHLEEN CLEARY**
**JOHN PINNOW**
Deputy Public Defenders
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LORENZO REID and LARRY BLAKE, a/k/a LARRY REID, ) ) ) | |
| Appellants-Petitioners, ) ) | |
| vs. ) | No. 89A01-1208-PC-377 |
| STATE OF INDIANA, ) ) ) | |
| Appellee-Respondent. ) | |

APPEAL FROM THE WAYNE SUPERIOR COURT
The Honorable Gregory Horn, Judge
Cause Nos. 89D02-9112-CF-111, 89D02-9111-CF-88

**April 8, 2013**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

Appellants-Petitioners Lorenzo Reid and Larry Blake seek post-conviction relief from their convictions and respective fifty-four and forty-four year sentences for murder and Class C felony attempted robbery. On September 21, 1990, Reid, Blake, and an unidentified third man were involved in an attempted robbery of a liquor store that resulted in the death of the owner of the liquor store. Following separate jury trials, both Reid and Blake were convicted of murder and Class C felony attempted robbery, and their convictions were affirmed on direct appeal. Reid and Blake subsequently requested post-conviction relief, and the instant appeal stems from the denial of these requests. Concluding that neither Reid nor Blake are entitled to post-conviction relief, we affirm the judgment of the post-conviction court.

**FACTS AND PROCEDURAL HISTORY**

At around 10:30 p.m. on September 21, 1990, Reid, Blake, and an unidentified male entered a liquor store in Richmond and attempted to rob the owner. *Reid v. State*, 719 N.E.2d 451, 453 (Ind. Ct. App. 1999). "The owner exchanged gunfire with the three men and was shot three times during the encounter." *Id*. "He later died." *Id*.

In 1991, the State charged Reid and Blake (collectively, "Appellants") with murder, felony murder, and Class A felony attempted robbery. Appellants were separately tried before juries in 1993, and each was convicted of murder and Class C felony attempted robbery. Reid was sentenced to an aggregate term of fifty-four years, and Blake was sentenced to an aggregate term of forty-four years. In 1994, Blake's convictions were affirmed on direct appeal in a memorandum decision. *Blake v. State*, 89A01-93-10-CR-341 (Ind. Ct. App. Nov. 22, 1994). On November 17, 1999, Reid's convictions were affirmed on

2

direct appeal. *Reid*, 719 N.E.2d at 459.

Appellants separately filed *pro se* petitions for post-conviction relief ("PCR") in 2000. They filed a joint motion for post-conviction DNA testing in 2006, as well as a second joint request in 2007. Both amended their PCR petitions in 2011. The post-conviction court conducted a joint hearing on Appellants' petitions on March 6 and 7, 2012. On August 16, 2012, the post-conviction court issued written findings and conclusions in an order denying Appellants' PCR petitions. This appeal follows.

## DISCUSSION AND DECISION

Post-conviction procedures do not afford the petitioners with a super-appeal. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999). Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. *Id.* "If an issue was known and available, but not raised on direct appeal, it is waived." *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001) (citing *Rouster v. State*, 705 N.E.2d 999, 1003 (Ind. 1999)). Petitioners who have been denied PCR appeal from a negative judgment and, as a result, face a rigorous standard of review on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Collier v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, petitioners must establish their claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, petitioners must convince this court that

3

the evidence, taken as a whole, "leads unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). We therefore accept the post-conviction court's findings of fact unless they are clearly erroneous but give no deference to its conclusions of law. *Id*.

## I. Loss or Destruction of Certain Evidence Following Conviction

Appellants contend that the post-conviction court erred in denying their request for relief because the State violated their rights under the Due Process Clause by its post-conviction loss or destruction of certain evidence. In making this contention, Appellants rely on the decisions of the United States Supreme Court in *Arizona v. Youngblood*, 488 U.S. 51 (1988), and *California v. Trombetta*, 467 U.S. 479 (1984). *Youngblood* and *Trombetta* stand for the proposition that a defendant's due process rights are violated by the State's failure to preserve, or the destruction of, evidence prior to trial if the materially exculpatory value of the evidence was apparent before the destruction or the evidence was potentially exculpatory and was destroyed in bad faith. *Youngblood*, 488 U.S. at 57-59; *Trombetta*, 467 U.S. at 488-89. However, the United States Supreme Court's subsequent decision in *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52 (2009), indicates that an

4

individual does not have a right under the Due Process Clause to access lost or destroyed evidence during post-conviction proceedings.

In *Osborne*, the defendant was convicted of kidnapping, assault, and sexual assault and his convictions were affirmed on direct appeal. 557 U.S. at 58. The defendant subsequently sought PCR. In his request for relief, the defendant requested certain post-conviction DNA testing. *Id*. at 59. Eventually, the Supreme Court granted certiorari to decide whether a defendant has a right under the Due Process Clause to obtain post-conviction access to the State's evidence for additional testing. *Id*. at 61. The Supreme Court determined that the defendant did not have a right to obtain post-conviction access to the State's trial evidence for additional testing, holding that the Due Process Clause does not require that certain recognized pre-trial rights be extended to protect a defendant's post-conviction liberty interests. *Id*. at 72-74. In making this holding, the Supreme Court recognized that a criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man and that a holding to the contrary would lead to a plethora of questions relating to whether there is a constitutional obligation to preserve certain evidence following trial for potential future testing, and, if so, for how long. *Id*. at 68, 74.

Here, Appellants argue that their due process rights were violated as a result of the post-conviction loss or destruction of certain DNA evidence. The evidence was available for testing and was tested prior to trial. Appellants had access to the evidence as well as the test results prior to trial, and the results of these tests, which excluded Appellants as potential sources for the DNA, were admitted at trial. In light of the Supreme Court's opinion in

*Osborne*, we conclude that, like the defendant in *Osborne*, Appellants do not have a Due Process right to obtain post-conviction access to the State's evidence for additional testing. *See id*. at 72-74.

Furthermore, even if we were to assume that the State did have some obligation to save certain evidence, Appellants' claim still fails. Appellants claim that the destroyed evidence was materially exculpatory rather than merely potentially useful evidence. We disagree. It is undisputed that prior tests on the evidence in question indicated that the DNA did not belong to either of the Appellants. Upon presenting the evidence at trial, the State conceded that the DNA did not belong to either of the Appellants, but rather argued that it likely belonged to their unknown accomplice. The triers-of-fact considered the fact that the DNA excluded Appellants as possible sources, but, in light of the other evidence presented by the State, found Appellants guilty of murder and attempted robbery.

In seeking PCR, Appellants do not claim that additional testing on the evidence could be any more exculpatory of their being potential sources of the DNA than the tests completed prior to trial. Instead, Appellants assert their innocence and claim that their rights under the Due Process Clause were violated by the loss or destruction of the evidence because they are unable to use newly developed DNA testing technology to find the individual responsible for the crimes. However, even assuming that additional testing could result in finding a match of the DNA evidence obtained at the crime scene, such a discovery would only be potentially useful as it would likely only identify Appellants' unknown accomplice and would not, in and of itself, prove that Appellants had not committed the crimes for which they were

6

convicted. *See generally Terry v. State*, 857 N.E.2d 396, 408 (Ind. Ct. App. 2006) (providing that the defendant did not have a right under the Due Process Clause to complete additional tests on the evidence post-conviction because further tests on the evidence could have established, at most, that neither defendant nor anyone connected to him owned the evidence, and, while helpful to support the defense's theory, would not exculpate the defendant), *trans. denied*. In addition, Appellants did not show that the State acted in bad faith in losing or destroying the evidence in question. Having concluded that the evidence in question was at most potentially exculpatory and that Appellants failed to demonstrate that the evidence was lost or destroyed in bad faith, we further conclude that Appellants would not be entitled to relief under the Supreme Court's holdings in *Youngblood* and *Trombetta*, even if they controlled. Accordingly, Appellants' claim relating to the loss or destruction of certain evidence fails.[1]

---

[1] Although not relied on by Appellants, we note that Indiana Code section 35-38-7 *et seq.* grants a petitioner the opportunity to seek post-conviction testing of DNA evidence. Indiana Code section 35-38-7 *et seq.*, however, would not provide Appellants the right to conduct the requested DNA testing because they have not presented prima facie proof of each of the statutory factors set forth in Indiana Code section 35-38-7-8. Indiana Code section 35-38-7-8 requires the petitioner to present prima facie proof of the following:

> (1) That the evidence sought to be tested is material to identifying the petitioner as:
>> (A) the perpetrator of; or
>> (B) an accomplice to;
> the offense that resulted in the petitioner's conviction.
> (2) That a sample of the evidence that the petitioner seeks to subject to DNA testing and analysis is in the possession or control of either:
>> (A) the state or a court; or
>> (B) another person, and, if this clause applies, that a sufficient chain of custody
> for the evidence exists to suggest that the evidence has not been substituted, tampered with, replaced, contaminated, or degraded in any material aspect.
> (3) The evidence sought to be tested:
>> (A) was not previously tested; or
>> (B) was tested, but the requested DNA testing and analysis will:

## II. *Brady* Claim

Appellants also contend that they are entitled to a new trial because the State failed to disclose before trial that one of its witnesses, Ronald Maiden, had a prior criminal conviction for robbery. The State, for its part, argues that Appellants are not entitled to relief because they have failed to demonstrate that Maiden had a prior robbery conviction. The State claims that the record merely demonstrates that Maiden was incarcerated after being charged with robbery, and is silent as to whether Maiden was ever convicted of the charged offense. Alternatively, the State argues that Appellants were not prejudiced by the State's alleged failure to disclose information about Maiden's prior criminal history.

> *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady* applies to evidence impeaching the credibility of State's witnesses. *See United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (citing *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)). The United States Supreme Court

---

(i) provide results that are reasonably more discriminating and probative of the identity of the perpetrator or accomplice; or
(ii) have a reasonable probability of contradicting prior test results.
(4) A reasonable probability exists that the petitioner would not have:
(A) been:
(i) prosecuted for; or
(ii) convicted of;
the offense; or
(B) received as severe a sentence for the offense;
if exculpatory results had been obtained through the requested DNA testing and analysis.

Again, the DNA evidence at issue in the instant matter was previously tested and excluded Appellants as potential sources for the DNA. Further, while Appellants argue that additional testing is necessary to prove the identity of the perpetrator, such identification would not necessarily be exculpatory to the Appellants, but rather would likely support the State's theory that Appellants were aided in committing the underlying crimes by an unknown accomplice. The fact-finders considered the fact that the Appellants were not possible sources of the DNA evidence found at the crime scene but, in light of the other evidence presented at trial, found the Appellants guilty of the charged offenses.

has recently summarized three components of a *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

*Carroll v. State*, 740 N.E.2d 1225, 1229 (Ind. Ct. App. 2000), *trans. denied*.

Again, the State argues that Appellants are not entitled to the requested relief because they have failed to demonstrate that Maiden was ever convicted of robbery. The evidence before the post-conviction court included the testimony of a police detective who indicated that he thought that Maiden might have been involved in a burglary or a robbery as a juvenile, but that he could not be certain. The evidence also included an Indiana State Police record that indicated that Maiden had been arrested by the Richmond Police Department for armed robbery on February 6, 1969, and that Maiden was ordered to the State Reformatory at Pendleton on July 8, 1969, on the charge of armed robbery. Nothing in the record indicates whether Maiden was ordered to the State Reformatory pending trial or following a criminal conviction. However, even assuming, without deciding, that the record is sufficient to establish that Maiden did have a prior robbery conviction, we conclude that Appellants' *Brady* claim fails because Appellants have failed to satisfy all three components set forth by the Supreme Court in *Strickler*.

As for the first *Strickler* component, the State does not dispute that the alleged criminal conviction was an impeachable offense. Robbery was considered an impeachable conviction at the time of Appellants' criminal trials. *Ashton v. Anderson*, 258 Ind. 51, 63,

279 N.E.2d 210, 217 (1972). As such, trial counsel for Appellants could have attempted to impeach Maiden by questioning him about the robbery conviction, and the conviction would fall within the ambit of *Brady* and its progeny. *See generally Carroll*, 740 N.E.2d at 1229 (providing that impeachable convictions fall within the ambit of *Brady* and its progeny).

As for the second *Strickler* component, Appellants presented evidence before the post-conviction court that the State knew, or could have known, about Maiden's criminal history but did not disclose the information to their trial counsel. "The availability of information is not measured in terms of whether the information is easy or difficult to obtain but by whether the information is in the possession of some arm of the state." *Id*. (internal quotations omitted). Here, because the State could have discovered information relating to Maiden's potential criminal history by completing a search of State Police records, we conclude that Maiden's record was at the State's disposal and that the State failed to disclose it. As such, the second *Strickler* component has been satisfied. *See id*.

Having determined that the first two *Strickler* components have been satisfied, we must determine "whether the nondisclosure was prejudicial to [Appellants], i.e., whether the suppressed evidence was material." *Id*.

> Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Bagley*, 473 U.S. at 682, 105 S.Ct. 3375. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id*. In proving materiality, it is not necessary for the defendant to show that "after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." *Kyles v. Whitley*, 514 U.S. 419, 434-35, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Rather, the defendant must show that the "favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the

verdict." *Id*. at 435, 115 S.Ct. 1555 (footnote omitted).

*Id*. at 1229-30.

In *Carroll*, we considered whether a six-year-old misdemeanor conviction for false informing or reporting was material. *Id*. at 1230. Upon review, we concluded that in light of all of the evidence presented at trial, the impeaching value of the six-year-old misdemeanor conviction was negligible, at best. *Id*. In coming to this conclusion, we noted that the testimony at trial and arguments by counsel did not portray the witness as a highly credible witness or otherwise upstanding citizen. *Id*. In addition, the State presented additional evidence of the defendant's guilt and the witness in question's testimony was cumulative of this additional evidence. *Id*. In light of the independent evidence of guilt, combined with the State's presentation of the witness as a less-than-sterling witness, we concluded that the State's nondisclosure of the six-year-old misdemeanor conviction did not satisfy the prejudice prong of *Strickler*. *Id*.

Similarly, in the instant matter, we conclude that in light of all of the evidence presented at trial, the impeaching value of the alleged robbery conviction is negligible, at best. The record demonstrates that the victim provided a statement to responding police officers before he died, in which he stated that he thought that the individuals who shot him had been in the liquor store approximately an hour before the robbery and shooting and that they had purchased a bottle of cognac. The victim told Maiden that he had sold a bottle of cognac, and Maiden testified that after checking the liquor store's inventory, he was able to confirm that a bottle of cognac had been sold on the day in question. In addition to the

11

victim's and Maiden's testimony, the testimony of two other witnesses placed Appellants at or near the liquor store at the time of the robbery and shooting, and a broken gold bracelet that was linked to one of the Appellants was found just outside the liquor store. Maiden's testimony corroborated the victim's statement to police that he had sold a bottle of cognac to the robbers earlier in the evening before the attempted robbery and shooting, and was merely cumulative of the other evidence linking Appellants to the crime scene on the day in question.

Moreover, the alleged conviction at issue in the instant matter was a twenty-four-year-old robbery conviction that appears to stem back to actions taken by Maiden as a teenager. Generally, the importance given to the remoteness of or the lapse of time from the witness's prior conviction is a question for the trier of fact to determine as to the weight of the evidence and credibility of the witness. *See Robinson v. State*, 446 N.E.2d 1287, 1292 (Ind. 1983).[2] However, in light of the independent evidence of Appellants' guilt, we cannot say that there is a reasonable probability that the outcome of Appellants' trials would have been

---

[2] Indiana Rule of Evidence 609, which came into effect after the completion of Appellants' criminal trials seems to reach the same conclusion with regard to the admissibility and relevance of Maiden's alleged criminal conviction. With respect to the admissibility and relevance of a remote criminal conviction, Indiana Rule of Evidence 609 provides as follows:

> **(b) Time Limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or, if the conviction resulted in confinement of the witness then the date of the release of the witness from the confinement unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

different had counsel for Appellants attempted to impeach Maiden with questions about a potential criminal act that occurred at least twenty-four years before Appellants committed the underlying criminal actions. Moreover, nothing in the record indicates that Maiden committed any other impeachable offense in the twenty-four intervening years, and we find it unlikely that a jury would find Maiden's testimony to be incredible merely because he may have potentially committed a single criminal offense as a teenager.

In sum, the independent evidence combined with the remoteness of Maiden's potential criminal conduct leads us to conclude that the State's nondisclosure of a twenty-four-year-old potential robbery conviction fails to establish the prejudice prong of *Strickler*. Accordingly, Appellants' *Brady* claim fails.

### III. Ineffective Assistance of Trial Counsel

Appellants also contend that they received ineffective assistance from their trial counsel. Appellants claim that each of their respective trial counsel was ineffective for failing to elicit expert testimony during trial regarding the bracelet found at the crime scene and the DNA evidence. The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial court cannot be relied

13

on as having produced a just result." *Strickland*, 466 U.S. at 686.

A successful claim for ineffective assistance of counsel must satisfy two components. *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). Under the first prong, the petitioners must establish that counsel's performance was deficient by demonstrating that counsel's representation "fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id*. We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client and therefore under this prong, we will assume that counsel performed adequately, and will defer to counsel's strategic and tactical decisions. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id*. Under the second prong, the petitioners must show that the deficient performance resulted in prejudice. *Reed*, 866 N.E.2d at 769. The petitioners may show prejudice by demonstrating that there is "a reasonable probability (*i.e.* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id*.

The petitioners' failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail. *See Williams*, 706 N.E.2d at 154. Therefore, if we can resolve a claim of ineffective assistance of counsel based on lack of prejudice, we need not address the adequacy of counsel's performance. *See Wentz v. State*, 766 N.E.2d 351, 360 (Ind. 2002).

### A. Gold Bracelet

Appellants claim that each of their trial counsel was ineffective for failing to call John Kanable, a manager at a jewelry store, to testify at trial regarding the gold bracelet found at the crime scene. Under certain circumstances, a failure to call a useful witness can constitute deficient performance. *See Brown v. State*, 691 N.E.2d 438, 447 (Ind. 1998). However, both the Indiana Supreme Court and this court have previously held that "a 'decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess.'" *Johnson v. State*, 832 N.E.2d 985, 1003 (Ind. Ct. App. 2005) (quoting *Brown*, 691 N.E.2d at 447), *trans. denied*; *see Wisehart v. State*, 693 N.E.2d 23, 48 n.26 (Ind. 1998) (stating that the decision of which witnesses to call is "the epitome of a strategic decision").

Appellants claim that Kanable's testimony would have been useful because it could have rebutted the testimony of the State's witnesses who testified about the gold bracelet and whose testimony linked the bracelet to Reid. During both criminal trials, the State presented the testimony of Kim Seals and Eugene Milliron. Seals, an employee of the J.B. Robinson jewelry store at the Salem Mall in Dayton, Ohio, testified that Reid had purchased a bracelet similar to the one found at the crime scene in 1988 or 1989, and that he had subsequently brought the bracelet in for repair. Seals further testified that the report generated prior to the repair described the bracelet as fourteen karat gold and that Reid estimated its value to be approximately $1200. In addition, Milliron, a subcontractor for J.B. Robinson who completed many of the Salem Mall store's requested repairs, testified that he recognized the bracelet found at the crime scene and that he was 90% certain that it was the same one that he had previously repaired. Milliron testified that goldsmiths typically have their own

15

techniques of doing different types of repairs, and, as a result, there is generally a little bit of difference between each goldsmith's work, and that he recognized the repair work on the bracelet in question as his work.

Appellants claim that they were prejudiced by their respective trial counsel's failure to call Kanable as a witness during their criminal trials because Kanable's testimony was such that it would have likely affected the outcome of their trials. Again, Appellants claim that Kanable's testimony would have been helpful because it could have rebutted Seals's and Milliron's testimony. Specifically, Appellants claim that Kanable would have testified that subsequent testing conducted in 2005 revealed that although the bracelet was marked as being made with fourteen karat gold, it actually contained gold of a lesser quality. Appellants claim that Kanable would have also testified that he estimated the bracelet's worth as only $350 to $399 in 1990 and that he would be unable to identify the individual who completed the repair.

Upon review, we cannot say that Kanable's proffered testimony is sufficient to demonstrate a reasonable probability, *i.e.* a probability sufficient to undermine confidence in the outcome of the criminal proceedings, that, but for counsels' alleged error, the result of the proceedings would have been different. Kanable's proffered testimony was nothing more than his opinion as to the quality and value of the bracelet in question and his statement that he could not identify the individual who completed the repair on the bracelet. Kanable did not have any specific personal knowledge about the bracelet in question, and, as such, his testimony stating his general opinions would not likely carry more weight with the fact-

16

finders than the testimony of those who had personal knowledge about the bracelet.

For example, while it might be difficult or even impossible for Kanable to identify Milliron's work, we cannot say that Kanable's testimony to this effect is such that would discredit Milliron's testimony that he was able to identify his own work and that he was 90% certain that he had completed the prior repair work on the bracelet found at the crime scene. Likewise, while Kanable's opinion regarding the value of the bracelet was substantially different than that included in Seals's testimony, the proffered value of the bracelet stated during Seals's testimony represented the value that was provided by Reid when he brought the bracelet in for repair and did not appear to represent her own evaluation of the bracelet's value. We do not find it unusual that the owner of an item would value that item at a higher worth than an independent expert evaluating the item. In short, Kanable's proffered testimony would not seem to discredit either Seals's or Milliron's testimony regarding their history with Reid or their familiarity with the bracelet in question. Rather, Kanable's testimony merely provides his personal opinion regarding the bracelet's quality and value and his claimed inability to identify the individual who completed the prior repair.

Based on our review of Kanable's proffered testimony, we conclude that Appellants have failed to prove that they were prejudiced by their respective trial counsel's alleged error because they have failed to demonstrate a reasonable probability that the outcome of their trials would have been different had their respective trial counsel called Kanable as a witness during trial. As such, Appellants have failed to prove that they received ineffective assistance of trial counsel in this regard.

17

**B. DNA**

Appellants also claim that they received ineffective assistance of trial counsel because each of their respective trial counsel failed to call a DNA expert at trial to testify about the DNA evidence found at the crime scene. Again, a small sample of DNA evidence was recovered from the crime scene. Testing conducted on the DNA evidence prior to trial excluded both of the Appellants as well as the victim as possible sources of the DNA evidence. The parties stipulated to these test results at trial, and the test results were admitted into evidence and were considered by the fact-finders. Appellants have failed to demonstrate what testimony an expert witness would have been able to provide in addition to the already stipulated-to fact that neither of the Appellants was a possible source for the DNA. Even assuming trial counsel would have called an expert witness to testify about this fact, such testimony would merely be cumulative of the already stipulated-to test results. As such, Appellants have failed to demonstrate that they were prejudiced by this alleged error of their respective trial counsel or that they received ineffective assistance of trial counsel in this regard.

**CONCLUSION**

In sum, Appellants' due process rights were not violated by the post-conviction loss or destruction of certain evidence, Appellants were not entitled to a new trial because the State failed to disclose before trial that one of its witnesses had a possible prior criminal conviction, and Appellants did not receive ineffective assistance of trial counsel. Accordingly, we affirm the post-conviction court's denial of Appellants' petitions for relief.

The judgment of the post-conviction court is affirmed.

RILEY, J., and BROWN, J., concur.